Our next case for argument is 22-2008 Fantasia Trading v. CogniPower Thank you, your honors. Good morning. May it please the court. I'd like to focus on just three points this morning out of this record. The first two relate to procedural errors that the board made in first in deciding that petitioner and its expert, Mr. Bohannon, failed to identify the so-called secondary bias circuits. He did not. He did so, and he did so consistently. And in fact, as we understand CogniPower's briefing, they aren't even arguing, actually, any longer that Mr. Bohannon failed to either initially identify those circuits or do so in a consistent fashion. The second procedural error has to do with recasting one of the primary alternative rationales for the motivation to combine that had to do with accommodating very low voltages in a way that was not what the rationale was and relied on new evidence that the petitioner never had an opportunity to address. And then the last point is just the substantive point to emphasize the key portions of the Mao reference that, in fact, were never disputed by the patent owner or its expert. On this issue of, so on the first point of identifying the secondary bias circuits, I'll be relatively brief unless your honors have specific questions. I can provide some citations to the record, but with respect to the Zhu reference in figure 3, this is at A160. Figure 3, Mr. Bohannon and the petition consistently identified the voltage Vout generated by this diode 313 stored on a capacitor 314 that was applied to the secondary controller. So those components were consistently identified. The petition says so at A250 and A257. The petition in those locations cites the Mr. Bohannon's declaration and again exemplary his O31 declaration paragraphs 49, which is A2686, 84, 143, 188, that's A2699, A2721, A2738. All of those paragraphs very specifically identify the circuit components and the board when it said both in its initial determination that he did not identify the circuits and in the final written decisions where they say he did not identify the circuits, the board didn't cite any of that. We don't know why. I don't know if it was an error or for some other reason, but the fact is he clearly and consistently identified them. Didn't the board just find him inconsistent and therefore not credible and aren't those factual findings that we should give deference to? Well, the first part is what they purported to do, yes. The second is no, you don't defer them because the board was clearly wrong in saying that he didn't identify Well, you just disagree. I don't know that they were clearly wrong. Cognizant Power doesn't even disagree with all due respect, Your Honor. Look at the declarations. It's there. We can do it here in real time. He was repeatedly laid out what those circuit components were. We don't know why the board didn't look at those paragraphs. I mean, it would be one thing if the board had looked at them and said, okay, Mr. Bohannon, I see you're pointing to A, B, C, and D. I don't think that qualifies or the opposing expert doesn't think that qualifies. In fact, on this record, Cognizant Power in its briefing doesn't dispute that. Cognizant Power's expert never came back and said, oh, those things that Mr. Bohannon identified are not, in fact, involved in providing bias to the secondary controller. And so, to get to the second part of your question, it isn't the sort of case, therefore, where you, I think, defer to the so-called credibility finding because the credibility finding is predicated on this clearly erroneous determination that the expert didn't do something. And that got this whole train going the wrong direction. I thought your main legal argument was that the board applied the wrong standard for obviousness by even requiring that there be a biased circuit. Am I misunderstanding? No, no, you're not. You're not. That's an independent argument, and that's also true. The fundamental motivation to combine here comes expressly from the MOU reference itself, and that was to apply MOU's improved biased circuit to any power converter in which the output voltage of the converter could vary. Or in which there's a biased circuit and you need to apply an improved biased circuit. I mean, one thing I was thinking about was yes, that would, in a vacuum, be a narrow way to look at an obviousness case. But it also seems consistent with the way your obviousness case was presented in your petition. Well, on that point, Your Honor, I'm actually glad you mentioned that. Because that the petition and the expert both said two things. The first part of the motivation to combine discussion says MOU has this expressed suggestion to make this combination and it would have been... To provide an improved biased circuit. Right. That could work at low voltages, right? Right. Merely because if you've got a conventional power supply where the output voltage can vary under all sorts of conditions, MOU can fix that. Then both the petitions and Mr. Bohannon go on to say, and in fact you could also actually take MOU's circuit and combine it with the circuits of JEW or CEPESCI. So it wasn't a... You could have replaced the biased circuit of the primary reference with the biased circuit of the secondary reference. That's true. I thought that's what the combination was. It was. In the petition. It was. Well, again, it was an alternative, right? There was the original broad motivation... Can you tell me one example? Because there's a whole bunch of primary references and a whole bunch of secondary references, I think. Right. No, there's one secondary reference. But do you want to give me an example in your petition where you think that you said something broader than a happy to? One second here, please. So the O31 petition for example begins at A252 and there's a heading there, motivation to combine. And the first paragraph under motivation to combine talks about the express teaching of MOU. That MOU expressly teaches that a biased circuit such as shown here, used to power a secondary controller can be subject to output voltage fluctuations. That was Mr. Bohannon's opinion of that teaching. And by the way, because this is also a very important point, your honors, Mr. Bohannon's interpretation of that passage of MOU at 150-55 was never contradicted by Cognate Power's expert. The board disagreed with it though. It doesn't matter if it was contradicted. I mean, unless I'm mistaken, I mean, the sentence you're talking about on Figure 1 is based on input voltages which vary. So why isn't the board free to disregard or disagree with Mr. Bohannon's testimony? It doesn't have to be contrary testimony that doesn't look at the reference and reach a contrary conclusion. Well, with all due respect, I mean, the board is not populated with people of skill in the art. I think the board has to do one of two things. They either have to point to the contrary expert and say this is disputed and we choose to believe expert B instead of expert A. That didn't happen here with respect to MOU. With all due respect, instead you brought in a witness that bounced all over the place in what he identified. Let's see. If I were to go through this little bench memo here, his original declaration, the overview of Zao is not the section describing the proposed modification. In the section describing one example of how the circuitry could be combined, the diagram shows rectifier diode 313 and capacitor 314. Mr. Bohannon stated the circuitry of Mao has been attached in place of the bias circuitry in Sue's which merely powered the secondary controller output. Then he switches. In his deposition, he says it's just a wire. He never mentions diode 313 or capacitor. Then in the supplemental declaration, he switches again. I think that it was reasonable for the board under the circumstances in which Mr. Bohannon is jumping all over the place between his original deposition, his declaration, and then his supplemental declaration to reach the conclusion that they did. So, can I break that down? Sure. I agree with you there that Mr. Bohannon in deposition did not identify, again, all of the circuit components. Because the board told us to. That's part of the error here. The board initially says, you didn't identify, Mr. Bohannon, the relevant circuit components in these bias circuits. He did. He clearly did, and Cogney-Farber doesn't even argue the opposite now. Okay, that's wrong. And then they say, and because you didn't, do it during trial. Develop it during trial and tell us where those components are. And Mr. Bohannon does that. And he identifies exactly the same circuit components. And, in fact, when he does so, his lead-in is, as I said in my initial... Can the supplemental declaration say, for the very first time, the components of the bias circuit are not being physically replaced in combination, only functionally replaced? Okay, and that is actually not the first time he said that. So, I'm glad you raised that. This has to do with the fact that some of the circuit components perform multiple roles in the circuit. And the board faulted him, and Cogney-Farber faulted him, for allegedly making that up in his supplemental declaration the first time. He didn't. Let me direct you to A2686, which is O31... It is the second one, Your Honor. The one with the declarations in it. Okay, 2686. His, I think, starts on 3223. Or that's the first one. That's the supplemental one. Sorry. Which one do you want me to look at? It's A2686. So, this is Mr. Bohannon's initial O31 declaration. Okay. There are two paragraphs of relevance, 48 and 49. Okay? 48, he says, this is with respect to Joux. He said exactly the same thing for Zepeshi, for Joux. He identifies in paragraph 48 that a rectifier and a capacitor are used to develop the regulated output voltage. Okay? So, the rectifier and the capacitor create the output voltage. 49, he says, as related to the bias circuitry for the secondary control circuit, that circuit takes its supply directly from Vout, relying upon the rectifier diode, 313, and the capacitor, 314. So, those same components are doing two things. They're generating the output voltage, and because the output voltage is applied to the secondary controller, they're involved in providing power to the secondary controller. They're doing two things. He was absolutely clear about that. Okay? And so, when he said the same thing again in his supplemental declaration, that's not new information. That's not backfilling. And so, the criticism of him on that ground by the board and by Cogney Power is not well taken. Now, there was a similar argument made, Your Honor, if this is in your notes or your bench memo. Yes. Sorry? Yes. Yes. Are you referring to the combo figure? Yes, I do see that. Because in that figure, he has offered conflicting testimony. I see what you pointed to in the two paragraphs you pointed to, and I credit you with that. The problem is, I'm reviewing this for substantial evidence, and in paragraph 58, I feel like he led the board astray with regard to what his position might have been vis-à-vis those other two paragraphs. And I'm reviewing this as a credibility assessment, and you agree. In this deposition, he just said, wired. He didn't mention any of this. So, can't you see, under my standard of review, why I don't just credit those earlier two paragraphs when paragraph 58 gave the board reason to be confused about what he was saying, and in the deposition, he said something completely different than what's in this declaration. You don't think that it was reasonable under those circumstances or that under the incredibly deferential standard I have to apply, I could say, in light of this evidence, it was reasonable for the board to find him not credible on these points? I think the board made its ultimate conclusion after, on the basis of its initial error, that Mr. Bohannon failed utterly to identify the bias circuits in these references. Okay, yes, but I have to find substantial evidence, right? I can't put myself in the brain of the board. You're telling me you think everything was tainted by this initial error that they had? And I'm saying they kind of went through all this and they said it wasn't in the first declaration and I'm saying paragraph 58, in my view, supports their confusion. Two very quick points because I'm conscious of the time. The board itself said that its understanding that Mr. Bohannon failed to identify the right circuit elements tainted is basically the rest of it. Not dispositive. Well, okay, it wasn't dispositive, but they said it was no small issue three times. Is there anything else you really wanted to touch on before? Because you're out of time. I want to give you a quick minute. Is there something that we didn't let you reach that you can reach? I'll deal with the rest of the rebuttal. That sounds great. Thank you. Mr. Warrick. Good morning, Your Honors. Philip Warrick, Irella Monello for Cognitive Power. I'd like to start by just addressing a couple things counsel raised. One, we absolutely disagreed about the inconsistency of the identification of the circuits, and that's in our brief, pages 50-58. When you say you disagree, do you mean the same thing that I just walked through, or are you talking about a different issue? Yes, Your Honor. The same thing I walked through? Correct. And you think what I said was right? Or reflects what the board concluded, whether it's right or wrong or irrelevant, because I review it all under a substantial evidence standard. Right. The board was faced with a situation where, sure, there may have been some statements about these components in the initial declaration. There was also the statement that you pointed out that those would be replaced. Paragraph 58. And then we have a deposition where the bias circuit was just a wire. So I don't want to dwell too long on this, Your Honors, because the case does not turn on the identification of these circuits. One thing that was important was that these primary references are regulated, which means that there is a certain type of feedback that allows them to maintain the voltage at a constant level or something near to it. And because of this, the mal-circuitry that is allegedly the forward pulse feature is not necessary. And that was not just something that the board came up with because they disagreed with Mr. Vahanen. It's something they affirmatively relied on Mr. Sandler's testimony, our expert. And you'll notice that the brief from... I just want to make sure I'm with you. Is this your argument that the first three are regulated and now it's unregulated so there wouldn't have been a motivation to combine them? Correct. Okay. I just want to make sure. It's a very complicated case. Go ahead. So the fact that they're regulated, the board relied heavily on this because...and there's testimony. We have testimony from Mr. Vahanen where he agrees that they are regulated. And is your argument, again, I'm just trying to make sure I'm with you, that that is an independent reason that justifies the worst result? Absolutely, Your Honor. So regardless of what happens with Vahanen, and whether the board made a mistake in what he did or did not correctly articulate in the first declaration, this is an independent reason? Correct. Okay. Go ahead. Regardless of how the circuitry could or could not be combined, that was a finding of the board. And just to take a step back, what we have here is a pretty remarkable situation. The board spent over 120 pages focused on motivation to combine. And the reason I think there's been so much confusion and disagreement is the petitioner  one page of explanation of motivation to combine. This is one example, Appendix 1079. Two paragraphs. It's the same effectively motivation to combine for every combination and not only in these... It says 1079? Correct. And it's very conclusory. And this is important. The board said that not only the expert but also the petitioner, it's very conclusory as well as inconsistent. And part of the problem we have here is that when we came back and responded to this motivation to combine, we had a lot of new arguments that showed up on reply. But notably, for motivation to combine, there were initially four. Two of those are not being argued on appeal. The additional topologies, the constant current mode, those aren't being argued. What we do have are the fluctuations which, as I pointed out, the fluctuation issue is not relevant to Zhu or Matsumoto. Because they're regulated. Correct. And the patented invention is also regulated. The main feature is a regulation feature. The other issue is this accommodating very low voltages. And likewise, we don't need to look at the circuitry. We have independent basis. For example, these are our expert cited evidence saying those are directed to high voltage applications, not low voltage applications. So... In response to that, these high voltage regulators would potentially have short circuits or things and therefore this bias circuit would benefit them. But there was no real connection to that. So that's something they argued for the first time in reply. In the motivation to combine, what they said is you could have a constant current mode that would cause the output voltage to drop to a level that was insufficient. And that is a motivation combined that they have not pressed on appeal. They separately said the circuit would be unable to accommodate very low output voltages. And in to support that, they cited this TSM document, appendix 2934 that talks about applications requiring low voltage battery charge. And then, somewhat remarkably, in reply they came back and said, oh no, we're not talking about low voltage applications. We're talking about these near short circuit events, which is something very different. And we know it's different because Mr. Bohannon, petitioner's expert, has a footnote in his supplemental declaration where he says these are very different things. Short circuit situation very different than an application that's designed to be low power. So for me, at a less sophisticated level of knowledge as to the art, my takeaway from this was the primary reference wouldn't exhibit the problems that would suggest combining it with the secondary reference because there'd be no motivation to do that because you wouldn't be having that problem if you were practicing the primary reference so you wouldn't go there. And that's basically what the patent office decided. There was no motivation to combine it. I absolutely honor. In a nutshell, that's absolutely correct. And it didn't sound unsophisticated at all. And just to reiterate, the board spent over 120 pages addressing this issue that the petitioner, not only the petitioner but also their expert spent really only a paragraph in all of their petitions addressing motivation to combine. I'm happy to talk more if you want about the circuitry. This isn't a bodily incorporation case. This isn't something where the board looked to what would actually happen with the circuit. I think that you may be the only person in the room who'd be happy if you talked more about the circuitry. I could be wrong about that. I think you're good. Thank you, Your Honors. Let me go very briefly and just reverse order and address Judge Benchavango your observation. The primary references absolutely have this problem of what happens if the voltage at the output drops and the impact that has on supplying power to the bias circuit. I'm sorry, that's a question we would review for substantial evidence, right? Sure, yes. But it's actually, I don't think on this record that fact is disputed. The board in its initial determinations actually agreed that the primary references did in fact have that problem and they credited Mr. Bohannon at that stage for recognizing that was the problem. And if you look in the appendix at 197 I'll just give you one concrete example on that. Okay, you've got one minute. You're already beyond your time, so however you want to spend your one minute, you've got to go. Well, I would like to address that concern of Judge Benchavango. So 197, this is the patent, okay? Column 5, line 24 to 27. Very important, the supply behave well when the output is open or short-circuited. In a short-circuit condition, the supply voltage for the secondary side controller gradually disappears. It drops. Short circuits result, even when you have a regulated output, all sorts of things can happen on that combine MAU with the primary references. Just a last point in my eight seconds. Again, I want to emphasize that the express teaching in MAU to use MAU's bias circuit to address that fact was undisputed by Coggy Power's own experts.